UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**WALID ABOU HALA ABOU HALA and KAREN LINDSAY EL KANTAR MENDEZ,**

      **Plaintiffs,**

v.                                    Case No: 6:23-cv-1541-PGB-DCI

**CHIEF, IMMIGRANT INVESTOR PROGRAM OFFICE, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, ATTORNEY GENERAL OF THE UNITED STATES and DIRECTOR, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES,**

      **Defendants.**
_____/

## ORDER

This cause is before the Court upon Defendants Alissa Emmel as the Chief of the Immigrant Investor Program Office, U.S. Citizenship and Immigration Services ("**USCIS**"); Alejandro Mayorkas as the Secretary of the U.S. Department of Homeland Security; Merrick Garland as the Attorney General of the United States; and Ur Mendoza Jaddou as the Director of USCIS' (collectively, "**Defendants**") Motion to Dismiss Plaintiffs' Complaint. (Doc. 18 (the

"**Motion**")). Plaintiffs Walid Abou Hala Abou Hala and Karen Lindsay El Kantar Mendez ("**Plaintiffs**") filed a response in opposition (Doc. 20 (the "**Response**")), and the matter is now ripe for review. Upon consideration, the Motion is due to be granted in part and denied in part.

I.  **BACKGROUND**[1]

Plaintiffs, a married couple, are Venezuelan nationals who temporarily reside in Orlando, Florida. (Doc. 1-2, pp. 5, 12, 14). In pursuit of permanent residency in the United States ("**U.S.**"), Plaintiffs invested $500,000 in the U.S. government's EB-5 visa program ("**EB-5 program**"). (Doc. 1, ¶ 20).

Pursuant to the Immigration and Nationality Act ("**INA**"), the EB-5 program "makes visas available to qualified immigrant investors who will contribute to the economic growth of the [U.S.] by investing in U.S. businesses and creating jobs for U.S. workers." (*Id.* ¶ 25 (citing INA § 203(b)(5))). To become an EB-5 immigrant investor ("**immigrant investor**"), one must "commit lawfully obtained funds to an investment project in the U.S." (*Id.* ¶ 26). Upon investing, an immigrant investor may submit a Form I-526 EB-5 petition, Immigrant Petition for Alien Entrepreneur ("**I-526 petition**"), to USCIS. (*Id.* ¶¶ 1, 27). Once USCIS approves the I-526 petition, an immigrant investor "may be eligible to apply for an immigrant visa to enter the U.S. and begin their lawful permanent residency." (*Id.* ¶ 27). Alternatively, if an immigrant investor is already present in the U.S.—like

---

[1] This account of the facts comes from Plaintiffs' Complaint. (Doc. 1). The Court accepts the well-pled factual allegations therein as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Plaintiffs here—he or she can submit a Form I-485, Application to Register Permanent Residence or Adjust Status ("**I-485 application(s)**"), to USCIS. (*Id.* ¶ 3; Doc. 1-2, p. 12; Doc. 18, p. 4). If USCIS approves the I-485 application, an immigrant investor receives a conditional permanent resident green card that is valid for two years. (Doc. 1, ¶ 28). Thereafter, to obtain an unrestricted permanent resident green card—which is valid for ten years—an immigrant investor must file a Form I-829, Petition by Investor to Remove Conditions on Permanent Resident Status. (*Id.* ¶ 29; Doc. 18, p. 4).

Plaintiffs filed their I-526 petition with USCIS on November 14, 2019. (Doc. 1, ¶ 2). Plaintiffs then filed their I-485 applications on August 5, 2022.[2] (*Id.* ¶ 3). Forty-five months[3] after filing their I-526 petition, on August 11, 2023, Plaintiffs initiated this action against Defendants. (Doc. 1 (the "**Complaint**")). In the Complaint, Plaintiffs allege three causes of action related to USCIS' "unreasonable delay" in adjudicating Plaintiffs' I-526 petition and I-485 applications. (*Id.* ¶¶ 33–52).

---

[2] It appears to the Court that the EB-5 Reform and Integrity Act of 2022 enabled Plaintiffs to file their I-485 applications prior to the approval of their I-526 petition. (*See* Doc. 18, p. 9 ("The legislation also permits eligible petitioners who have visas available to file their Form I-485 adjustment of status applications concurrently with (or subsequent to) their I-526 petitions, rather than needing to wait to apply for adjustment of status until their I-526 petitions have been approved.")).

[3] The Court notes that in the Motion and Response, the parties differ in their accounts of USCIS' processing time of Plaintiffs' I-526 petition. (Doc. 18, pp. 8–9; Doc. 20, pp. 3–8). Specifically, the parties differ on whether the eight-and-a-half month "lapse" of statutory authorization for the EB-5 program should be accounted for when calculating USCIS' processing time. (*Id.*). However, Plaintiffs failed to mention such a "lapse" in the Complaint, and consequently, the Court need not address the difference in processing times at this stage. (*See* Doc. 1).

In Count I, Plaintiffs allege Defendants violated the Administrative Procedure Act ("**APA**")—5 U.S.C. §§ 555(b), 551(13), 702, 706(1)—for failing to adjudicate Plaintiffs' I-526 petition and I-485 applications "within a reasonable time." (*Id.* ¶¶ 33–41). In Count II, Plaintiffs allege Defendants violated the APA, 5 U.S.C. § 706(2)(A), through their "arbitrary, capricious, *ultra vires*, and otherwise unlawful acts of refusal to timely adjudicate Plaintiffs' I-526 petition and I-485 applications." (*Id.* ¶¶ 42–44). In Count III, Plaintiffs allege a claim for mandamus relief under 28 U.S.C. § 1361, requesting that the Court issue an Order compelling Defendants to adjudicate Plaintiffs' I-526 petition within fourteen days and to adjudicate Plaintiffs' I-485 applications within one hundred and twenty days. (*Id.* ¶¶ 45–52). Finally, Plaintiffs vaguely mention declaratory relief in their request for the Court to declare Defendants' delays as "unreasonable and in violation of the APA and the INA." (*Id.* at p. 13).

Defendants filed the instant Motion, and Plaintiffs filed a response in opposition. (Docs. 18, 20). The matter is thus ripe for review.

## II. STANDARD OF REVIEW

### A. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge subject matter jurisdiction on facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). For facial challenges as here, the court looks to the face of the complaint and determines whether the plaintiff sufficiently alleges standing. *Stalley ex rel. U.S. v. Orlando*

*Reg'l Healthcare Sys. Inc.*, 524 F.3d 1229, 1232–33 (11th Cir. 2008). In doing so, the court is limited to the complaint's allegations and exhibits, which the court must accept as true. *Id.* at 1232. Factual challenges, in contrast, allow a court "to consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael*, 572 F.3d at 1279.

### B.     Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

### III.  DISCUSSION

In the Motion, Defendants first argue that Plaintiffs' mandamus claim under Count III should be dismissed under both Rule 12(b)(1) and Rule 12(b)(6). (Doc. 18, pp. 13–18). Defendants then contend that Plaintiffs' APA claims under Counts I and II should be dismissed pursuant to Rule 12(b)(6). (*Id.* at pp. 18–23). The Court addresses Plaintiffs' claims in the same order.

#### A.  Count III: Mandamus Relief Claim

As an initial matter, the Court clarifies Plaintiffs' requested mandamus relief. Plaintiffs correctly assert that 8 C.F.R. § 103.2(b)(19) requires Defendants to "produce a written decision on all petitions and applications submitted to it." (Doc. 20, p. 13; *see* Doc. 1, ¶ 47). However, with respect to Count III, Plaintiffs do not allege that Defendants refused to adjudicate their petition and applications. (*See* Doc. 1, ¶¶ 45–52; *see also* Doc. 1-2, pp. 3, 8–9 (providing USCIS' notices of receipt informing Plaintiffs that their I-526 petition is "in process" and that USCIS is "currently processing" the I-485 applications)). Rather, "Plaintiffs challenge only

the reasonableness of Defendants' delay or inaction." (Doc. 1, ¶ 49). Moreover, Plaintiffs request that the Court compel Defendants' adjudication of the I-526 petition within fourteen days and of the I-485 applications within one hundred and twenty days. (Doc. 1, p. 13). Accordingly, Plaintiffs' requested relief is that the Court compel Defendants to adjudicate Plaintiffs' I-526 petition and I-485 applications *within a certain time frame.* (*Id.*); *see also Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1285 (S.D. Fla. 2023) (finding that the question is not whether there is a non-discretionary duty to adjudicate, "rather, the Court must determine whether Defendants have a non-discretionary duty to act to adjudicate Plaintiff's I-526 petition ***in a certain time frame***, whether general, reasonable, or even the more specific period of '180 days.'" (emphasis in original) (citing 8 U.S.C. § 1571(b))).

Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Hakki v. Sec'y Dep't of Veteran Affs.*, 7 F.4th 1012, 1036–37 (11th Cir. 2021) (citing *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003)). "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) 'no other adequate remedy [is] available.'" *Cash*, 327 F.3d at 1258

7

(citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980))[4]. "Put another way, a writ of mandamus 'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if defendant owes him a clear nondiscretionary duty.'" *Cash*, 327 F.3d at 1258 (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Defendants assert that Plaintiffs fail to meet their burden under the Mandamus Act. (Doc. 18, p. 14). Specifically, Defendants argue that because 8 U.S.C. § 1571(b) and USCIS' historical processing times are not binding on USCIS, Plaintiffs cannot satisfy the first and second factors for mandamus relief. (*Id.* at pp. 14–17). As to the third factor, Defendants posit that the APA provides Plaintiffs with another adequate remedy. (*Id.* at p. 18). In response, Plaintiffs argue that the first and second factors have been established because 8 C.F.R. § 103.2(b)(19) requires USCIS "to produce a written decision on all petitions and applications submitted to it." (Doc. 20, p. 13). Next, Plaintiffs assert that "it is premature to find that Plaintiffs cannot satisfy the third" factor because their APA claims are pending before the Court. (*Id.*).

Here, because the "question of Defendants[] having a clear duty determines in large part whether Plaintiff[s] [have] a right to the relief sought," the Court analyzes the first and second factors for mandamus relief together. *See Osechas Lopez*, 649 F. Supp. 3d at 1285; *Cash*, 327 F.3d at 1258. Simply put, Plaintiffs fail

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting as binding precedent all Fifth Circuit decisions prior to October 1, 1981).

to establish that Defendants have a "clear nondiscretionary duty" to adjudicate within the requested time frame. (*See* Doc. 1, p. 13); *Cash*, 327 F.3d at 1258; *see e.g., Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1205 (M.D. Fla. 2007) (finding that, with respect to an I-485 application, USCIS "has a non-discretionary duty to *act* on an application, a discretionary duty as to the *pace* of processing the application, and a non-discretionary duty to *adjudicate* the application" (emphasis in original)). At most, Plaintiffs allude to 8 U.S.C. § 1571(b), which states: "It is the sense of Congress that the processing of an immigration benefit application *should* be completed not later than 180 days." (Doc. 1, ¶¶ 29–31) (emphasis added). However, the Eleventh Circuit has held that "should" is "permissive, rather than mandatory, language." *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1196 (11th Cir. 2008). Several courts have emphasized the same when assessing 8 U.S.C. § 1571(b) as a basis for mandamus relief. *See Osechas Lopez*, 649 F. Supp. 3d at 1286 (citing *Lambert*, 544 F.3d at 1196); *Nascimento v. U.S. Dep't of Homeland Sec.*, 689 F. Supp. 3d 1245, 1249 (S.D. Fla. 2023) (citations omitted) ("'should' is not 'must'"); *Mafundu v. Mayorkas*, 699 F. Supp. 3d 1310, 1314 (S.D. Fla. 2023) ("The permissive wording of the statute makes clear Congress did not impose a mandatory timeframe on USCIS's adjudication."). Thus, as Plaintiffs concede, 8 U.S.C. § 1571(b) is not a statutorily mandated timeline, so Defendants do not have a clear duty to act within a certain time frame. (Doc. 1, ¶ 29). Consequently, Plaintiffs do not have a clear right to the requested relief.

Even assuming Plaintiffs could establish the first and second factors for mandamus relief—which they cannot—Plaintiffs fail to establish the third factor. Plaintiffs have not demonstrated that they lack an adequate alternative remedy for obtaining relief. (*See* Doc. 1). In fact, Plaintiffs have sued under the APA, which provides an adequate remedy.[5] (*Id.* ¶¶ 33–44); 5 U.S.C. § 706; *see Hollywood Mobile Ests. Ltd., v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1268 ("The availability of relief under the Administrative Procedure Act [] forecloses a grant of a writ of mandamus.").

Thus, because Plaintiffs cannot satisfy any of the three factors for mandamus relief, Count III is due to be dismissed without prejudice pursuant to Rule 12(b)(1).[6] *Cash*, 327 F.3d at 1258 (emphasizing that a writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty" (internal quotation marks and citation omitted)).

## B.     Count II: 5 U.S.C. § 706(2)(A) Claim

Defendants argue that Count II should be dismissed under Rule 12(b)(6) because "no final agency action has occurred." (Doc. 18, p. 23). Plaintiffs do not rebut this argument. (*See* Doc. 20). Instead, Plaintiffs present new allegations

---

[5]  Moreover, as Plaintiffs note, they also have the administrative remedy of placing an "expedite request" with USCIS. (Doc. 1, ¶ 11).

[6]  Defendants also move to dismiss Plaintiffs' Mandamus Act claim pursuant to Rule 12(b)(6). (Doc. 18, p. 18). Because the Court finds that it is without jurisdiction to consider Plaintiffs' Mandamus Act claim, the Court need not consider Defendants' arguments pursuant to Rule 12(b)(6).

regarding Count II, which the Court declines to address. (*Id.* at pp. 14–15); *see* discussion *infra* note 7.

Under the APA, a reviewing federal court shall set aside an agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "When review is sought under a general review provision of the APA, like section 706(2)(A), the 'agency action' in question must be 'final agency action.'" *Am. Anti-Vivisection Soc'y v. U.S. Dep't of Agric.*, 946 F.3d 615, 620 (D.C. Cir. 2020) (citations, alterations, and quotation marks omitted); 5 U.S.C. § 704. An agency action is final when it: (1) "mark[s] the consummation of the agency's decision[-]making process," and (2) is one by which "rights or obligations have been determined, or from which legal consequences will flow." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal quotation marks and citations omitted).

In sum, Plaintiffs do not allege any final agency action. (*See generally* Doc. 1). At best, Plaintiffs allege that Defendants violated 5 U.S.C. § 706(2)(A) through their "arbitrary, capricious, *ultra vires*, and otherwise unlawful acts of refusal to timely adjudicate Plaintiffs' I-526 petition and I-485 applications." (*Id.* ¶ 44). To the extent Plaintiffs attempt to frame Defendants' delays in adjudication as an outright refusal, there is still no final agency action. Notably, Defendants' decision-making process has not reached its "consummation." *See Bennett*, 520 U.S. at 178 (explaining that a final agency action "must not be of a merely tentative or interlocutory nature"). To the contrary, Defendants' decision-making process is

11

still ongoing. (*See* Doc. 1-2, pp. 3, 8–9 (USCIS' notice of receipts informing Plaintiffs that their I-526 petition is "in process" and that USCIS is "currently processing" the I-485 applications)). Accordingly, Count I of the Complaint is due to be dismissed.[7]

## C. Count I: 5 U.S.C. § 706(1) Claim

In their Motion, Defendants argue that Plaintiffs fail to state a claim under § 706(1) because: (1) 8 U.S.C. § 1571(b) is a "non-binding sense of Congress"; (2) USCIS' processing times are not binding; (3) at the time the Complaint was filed, Plaintiffs' I-526 petition had been pending for less time than the median processing time; (4) other courts have concluded no unreasonable delay existed where I-526 petitions had been pending for a time period similar to or longer than the time period at issue here; and (5) Plaintiffs have not alleged sufficient prejudice. (Doc. 18, pp. 18–22). In their Response, Plaintiffs assert that the analysis of whether a delay is "unreasonable" is a fact-intensive inquiry, which should not be resolved at the motion to dismiss stage. (Doc. 20, pp. 15–19).

---

[7] The Court notes that in their Response, Plaintiffs change course and allege that: "Based on the government's own representations in [*Behring Regional Center LLC v. Mayorkas*, No. 22-cv-02487-VC, 2022 WL 2290594 (N.D. Cal June 24, 2022)], Plaintiffs have stated a plausible claim that Defendants' cessation on processing pre-existing petitions, like theirs, would constitute arbitrary, capricious, and [sic] action not in accordance with law." (Doc. 20, pp. 14–15). However, in the Complaint, Plaintiffs did not discuss, or even mention, the *Behring* case, Defendants' representations therein, or Defendants' alleged cessation of processing pre-existing petitions. (*See generally* Doc. 1). As a result, the Court need not analyze Plaintiffs' newly presented allegations. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (explaining that in conducting a Rule 12(b)(6) analysis, "[a] court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims" (citing *Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997))).

12

The APA authorizes suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" includes the "failure to act." 5 U.S.C. § 551(13). As relevant here, the APA requires a federal agency to "conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b). Consequently, under the APA, a reviewing federal court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

When analyzing whether an agency's delay is unreasonable, some courts apply the six-factor test delineated in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) [hereinafter *TRAC*]. Although the Eleventh Circuit has not expressly adopted the *TRAC* factors, several lower courts have turned to these factors when analyzing unreasonable delay claims. *See Osechas Lopez*, 649 F. Supp. 3d at 1287; *see also* cases cited *infra* note 8. The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted). Ultimately, "what constitutes an unreasonable delay in the immigration context depends to a great extent on the facts of the particular case." *Santiago v. Mayorkas*, 554 F. Supp. 3d 1340, 1353 (N.D. Ga. 2021) (internal quotation marks and citations omitted). As a result, courts are split on whether it is appropriate to analyze the *TRAC* factors at the motion to dismiss stage.[8]

At this procedural stage, the Court lacks sufficient information to evaluate the *TRAC* factors in its assessment of whether Defendants' delays in adjudication are unreasonable. *See Segovia v. Garland*, No. 1:23-cv-1478-AT, 2024 WL 1223481, at *13–16 (N.D. Ga. Mar. 21, 2024) (delineating other courts' analysis on declining application of the *TRAC* factors at the motion to dismiss stage for an unreasonable delay claim).[9] For example, as to the first *TRAC* factor—although the parties briefly discuss USCIS' "rule of reason" in adjudicating I-526 petitions, the Court lacks insight as to how this rule is implemented. (*See* Doc. 18, pp. 5–7, 9–12;

---

[8] In the context of unreasonable delay claims as to USCIS' adjudication, several courts within the Eleventh Circuit have analyzed the *TRAC* factors upon a finding of sufficient facts to do so. *See, e.g.*, *Mafundu*, 699 F. Supp. 3d at 1316–17; *Osechas Lopez*, 649 F. Supp. 3d at 1287–91; *Nascimento,* 689 F. Supp. 3d at 1249–51; *Hidalgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235, 1244–45 (S.D. Fla. 2021); *Otto v. Mayorkas*, No. 8:22-cv-1172-WFJ-SPF, 2023 WL 2078270, at *3–5 (M.D. Fla. Feb. 17, 2023). However, other courts have found the *TRAC* factors to be too fact intensive to analyze at the motion to dismiss stage. *See, e.g.*, *Santiago*, 554 F. Supp. 3d at 1353–54; *Segovia v. Garland*, No. 1:23-cv-1478-AT, 2024 WL 1223481, at *13–16 (N.D. Ga. Mar. 21, 2024); *Tikhonov v. Mayorkas*, No. 23-24572-CIV-LENARD, 2024 WL 3327777, at *2–3 (S.D. Fla. Mar. 12, 2024); *Mondragan Tinoco v. Mayorkas*, No. 1:20-cv-4787-MLB, 2021 WL 3603373, at *9–11 (N.D. Ga. Aug. 13, 2021); *Lammers v. Chief, Immigrant Inv. Program, US Citizenship and Immigr. Servs.*, No. 6:21-cv-668-GAP-GJK, 2021 WL 9408916, at *2–3 (M.D. Fla. July 18, 2021).

[9] "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

*see also* Doc. 20, pp. 3–8, 14); *TRAC*, 750 F.2d at 80; *see also Santiago*, 554 F. Supp. 3d at 1354 (declining analysis of the *TRAC* factors because the court "does not know enough about how the agency implements its rules and exceptions" as to the "rule of reason" factor). Moreover, at this procedural stage, the Court is not privy to agency-specific information, such as the "effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80; *see Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 453 (6th Cir. 2022) (finding that the "machinery" of the U-visa process is "known only to USCIS" when analyzing the *TRAC* factors); *see also Gonzalez v. Cuccinelli*, 985 F.3d 357, 375–76 (4th Cir. 2021) (explaining the difficulty of applying the *TRAC* factors at the motion to dismiss stage for an unreasonable delay claim). The Court thus finds it premature to address the *TRAC* factors.

In any event, the Court finds Plaintiffs' allegations sufficient to render it plausible that Defendants' delays are unreasonable. *See Ashcroft,* 556 U.S. at 678. As alleged in the Complaint, Plaintiffs have been "adversely affected or aggrieved" by Defendants' agency action, namely the failure to adjudicate Plaintiffs' I-526 petition and I-485 applications "within a reasonable time." (Doc. 1, ¶¶ 1–3, 7, 12, 41; Doc. 1-2); *see* 5 U.S.C. §§ 555(b), 551(13), 702. Specifically, Plaintiffs allege they are suffering "harm in the form of personal, family, and financial distress, additional unplanned legal expenses, anxiety, increased living and travel expenses, and professional disruption." (Doc. 1, ¶ 12). In support, Plaintiffs explain the financial harms they have experienced in securing legal resources, maintaining

15

residences in both the U.S. and Venezuela, and being unable to manage their businesses in Venezuela. (Doc. 1-2, p. 5). Next, Plaintiffs sufficiently allege that under the APA, Defendants have a duty to adjudicate Plaintiffs' I-526 petition and I-485 applications "within a reasonable time." (Doc. 1, ¶¶ 33–39). Considering Defendants have yet to fulfill this duty since Plaintiffs' filing of the I-526 petition on November 14, 2019 and filing of the I-485 applications on August 5, 2022, it is at least plausible that Defendants' delays are unreasonable. (*Id.* ¶¶ 1–3). Consequently, the Court denies Defendants' request to dismiss Count I.

### D.   Declaratory Judgment

Lastly, Defendants argue that to the extent Plaintiffs pursue a claim under the Declaratory Judgment Act, it should be dismissed for failure to state a claim. (Doc. 18, p. 23). In their Response, Plaintiffs do not rebut Defendants' argument, nor do they address the Complaint's cursory references to declaratory relief. (*See* Doc. 20).

Pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

Even if Plaintiffs had pled more than cursory references regarding the requested declaratory relief, "a court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are

16

already before the court." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1350 (S.D. Fla. 2014) (citation omitted). Plaintiffs request that the Court "[d]eclare Defendants' delays in completing the background checks for, and adjudication of, their I-526 petition and I-485 applications, are unreasonable and in violation of the APA and INA." (Doc. 1, p. 13). This requested declaration is essentially the same as the relief sought in Count I. (*Id.* ¶¶ 33–41); *see Perett v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346–47 (S.D. Fla. 2012). Thus, considering this issue is properly raised in Count I, which survives this Motion, the Court need not entertain Plaintiffs' cursory references to declaratory relief. *See Eisenberg*, 1 F. Supp. 3d at 1350; *see* discussion *supra* Section III.C.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Plaintiffs' Complaint (Doc. 18) is **GRANTED IN PART AND DENIED IN PART**. Counts II and III are **DISMISSED WITHOUT PREJUDICE.**

**DONE AND ORDERED** in Orlando, Florida on September 13, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties